Filed 6/3/25  In re Bailey B. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re BAILEY B., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E085477 |
| Plaintiff and Respondent, | (Super.Ct.No. DPRI2300128) |
| v. | OPINION |
| J.B. et al., | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County.  Walter H. Kubelun, Judge.  Conditionally reversed with directions.

Sarah Vaona, under appointment by the Court of Appeal, for Defendant and Appellant, J.B.

Lelah S. Forrey-Baker, under appointment by the Court of Appeal, for Defendant and Appellant, E.C.

1

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Larisa R-McKenna, Deputy County Counsel, for Plaintiff and Respondent.

Jorge B. (Father) and Evelyn C. (Mother) appeal from the juvenile court's order terminating parental rights to their daughter, Bailey B. The parents argue that the court and Riverside County Department of Public Social Services (DPSS) failed to comply with the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related state law. We agree and conditionally reverse.

## BACKGROUND

In April 2023, DPSS took newborn Bailey into protective custody after Mother and the baby tested positive for amphetamines at Bailey's birth. Mother disclosed that she had been using methamphetamine daily for the past five years. Father disclosed that he had recently used methamphetamine with Mother.

Mother lived with the maternal great-aunt. Mother identified the maternal aunt as someone willing to care for Bailey; the maternal aunt and the maternal grandmother lived in Oregon.

Both parents denied any Indian ancestry when interviewed by the social worker, and they filed Judicial Council ICWA-020 forms indicating the same.[1]

DPSS filed a petition under Welfare and Institutions Code section 300, subdivision (b), alleging that both parents abused controlled substances. (Unlabeled statutory

---

[1] Because ICWA uses the term "Indian," we use it as well "to reflect the statutory language." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1125, fn. 1 (*Dezi C.*).) No disrespect is intended.

references are to the Welfare and Institutions Code.) The court detained Bailey from both parents. It found that "ICWA likely does not apply" but directed DPSS to continue its ICWA inquiry "as to any relatives that make themselves available."

When interviewed for the jurisdiction/disposition report, Mother said that she occasionally spoke to the maternal grandmother. Mother again stated that she wanted the maternal aunt to be considered for placement, and she provided the maternal aunt's phone number. Mother mentioned that she also had a brother, and she identified him by name. Father reported that he wanted the paternal uncle to be considered for placement, and he provided a phone number for the paternal uncle.

At the jurisdiction and disposition hearing in May 2023, the court found the allegations of the petition true, adjudged Bailey a dependent of the court, removed her from both parents' custody, and ordered reunification services for the parents. The court authorized the maternal aunt to be assessed for placement in Oregon under the Interstate Compact on Placement of Children (Fam. Code, § 7900 et seq.). The court also found that ICWA did not apply but again directed DPSS "to continue its inquiry with any relatives that it may come across."

The court terminated the parents' reunification services at the contested 12-month review hearing and set the matter for a section 366.26 hearing. Two review reports during the reunification period listed phone numbers for the maternal aunt and the maternal grandmother.

The court held a postpermanency review hearing in November 2024. It found that sufficient ICWA inquiry had been made and that ICWA did not apply to Bailey.

3

At the section 366.26 hearing in February 2025, the court found that Bailey was likely to be adopted and terminated parental rights. A maternal cousin was present at the hearing, and the court asked whether he had any Indian ancestry. The maternal cousin replied that he did not. Although the court did not make an express ICWA finding at the section 366.26 hearing, the order terminating parental rights "was necessarily premised on a *current* finding by the juvenile court" that ICWA did not apply to Bailey. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 10.)

## DISCUSSION

The parents argue that the court prejudicially erred by failing to ensure that DPSS conducted an adequate ICWA inquiry. We agree. DPSS failed to discharge its duty of initial inquiry with respect to extended family members.

The child welfare department and the juvenile court have an "affirmative and continuing duty to inquire" whether a child in a dependency proceeding "is or may be an Indian child." (§ 224.2, subd. (a).) "The duty to inquire consists of two phases—the duty of initial inquiry and the duty of further inquiry." (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 678 (*Ricky R.*), disapproved on another ground by *Dezi C.*, *supra*, 16 Cal.5th at p. 1152, fn. 18.)

"The duty of initial inquiry applies in every dependency proceeding." (*Ricky R.*, *supra*, 82 Cal.App.5th at p. 678.) The child welfare department's duty to inquire begins "when first contacted regarding a child." (§ 224.2, subd. (b)(1).) The department must ask the "party reporting child abuse or neglect whether the party has any information that the child may be an Indian child," and the department must also ask the child and the

4

child's family members, including extended family members, upon first contact with those individuals.  (*Ibid.*)  In addition, if the child is taken into the department's temporary custody under section 306, "or if they were initially taken into protective custody pursuant to a warrant described in Section 340," then the department must ask "the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b)(2).)  Extended family members include adults who are the child's stepparents, grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, or first or second cousins.  (§ 224.1, subd. (c)(1).)

Although the child welfare department is required to conduct an ICWA inquiry of extended family members, state law "'does not require the agency to "find" unknown relatives and others who have an interest in the child, merely to make reasonable inquiries.  The operative concept is those people who are reasonably available to help the agency with its investigation into whether the child has any potential Indian ancestry should be asked.'" (*Dezi C.*, *supra*, 16 Cal.5th at p. 1140.)

Juvenile courts must conduct their own initial inquiry as well.  "Federal regulations require state courts to ask each participant 'at the commencement' of a child custody proceeding 'whether the participant knows or has reason to know that the child is an Indian child.'" (*Ricky R.*, *supra*, 82 Cal.App.5th at pp. 678-679, quoting 25 C.F.R. § 23.107(a) (2022).)  Similarly, state law requires the court to pursue an ICWA inquiry at the first hearing on a dependency petition (or at the first court appearance of a party or

5

"other interested person[]," if the party or other interested person was not present at the first hearing). (§ 224.2, subd. (c).) Further inquiry is required only if the court or the child welfare department has "reason to believe" that an Indian child is involved. (§ 224.2, subd. (e).)

The child welfare department "must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status." (Cal. Rules of Court, rule 5.481(a)(5).) The juvenile court may find that ICWA does not apply to the proceedings if it finds "that an agency's inquiry and due diligence were 'proper and adequate,' and the resulting record provided no reason to know the child is an Indian child." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1134.)

"[T]he juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review. [Citations.] '"On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes."' [Citations.] [¶] If, upon review, a juvenile court's findings that an inquiry was adequate and proper and ICWA does not apply are found to be supported by sufficient evidence and record documentation as required by California law [citation], there is no error and conditional reversal would not be warranted even if the agency did not inquire of everyone who has an interest in the child. On the other hand, if the inquiry is inadequate, conditional

6

reversal is required so the agency can cure the error and thereby safeguard the rights of tribes, parents, and the child." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1141.)

DPSS failed to inquire of several extended family members who were reasonably available in this case. The agency had contact information for the maternal aunt, the maternal grandmother, and the paternal uncle. But there is no evidence that DPSS attempted to contact those relatives to inquire about possible Indian ancestry. In addition, there is no evidence that DPSS asked for the maternal uncle's contact information or otherwise attempted to contact him after Mother identified him by name. The agency erred by failing to discharge its duty of initial inquiry with respect to those extended family members. Father contends that DPSS also erred by failing to ask the maternal great-aunt about possible Indian ancestry, but we find no error with respect to her. She does not qualify as an extended family member under the statutory definition. (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1053 [agency did not have a duty to inquire of great-grandparents because they were not extended family members under ICWA].)

For these reasons, there is insufficient evidence to support the court's implied finding that DPSS conducted an adequate and proper ICWA inquiry. We therefore conditionally reverse the order terminating parental rights and remand for DPSS to conduct a proper inquiry. (*Dezi C.*, *supra*, 16 Cal.5th at p. 1141.)

### DISPOSITION

The order terminating parental rights is conditionally reversed. On remand, the juvenile court shall order DPSS to comply with its duty of initial inquiry under subdivision (b) of section 224.2 and, if applicable, the duty of further inquiry (§ 224.2,

subd. (e)) and the duty to provide notice to the proper tribes (25 U.S.C. § 1912(a); § 224.3).  The court shall also order DPSS to comply with the documentation requirements of rule 5.481(a)(5) of the California Rules of Court.  If the court determines that DPSS has complied and that ICWA does not apply, then the court shall reinstate the order terminating parental rights.  If the court determines that ICWA applies, then it shall proceed in conformity with ICWA and related California law.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:

RAMIREZ
P. J.

MILLER
J.